Stephen McNamara, as Administrator of the Estate of Philip McNamara, Deceased, Respondent, *v.* Abraham Leipzig, Appellant, Impleaded with Another.

**Master and servant — negligence — automobiles — chauffeur, hired and paid by garage company to operate automobile rented by company for a fixed period at a fixed rental for the use of the lessee, not the servant of the lessee.**

1. A servant lent or let by his master to another does not become the servant of the other because the other directs what work is to be done or in what way it is to be done. If the servant remains subject to the general orders of the person who hires and pays him he is still his servant, although specific directions may be given him by the other, from time to time, as to the work to be done.

2. Where a garage company by a written agreement rented an automobile and the services of a chauffeur to defendant for a certain term and for a designated sum, to convey defendant wherever he desired to go, the company to hire and pay the chauffeur, to pay all expenses of the maintenance and operation of the car and to provide insurance protecting the defendant from all liability by reason of accident, such chauffeur was not the servant of defendant nor did the relation of principal and agent exist. The chauffeur was the servant of the company in its undertaking to furnish an automobile for the use of the defendant and to carry out the company's work under the agreement. The defendant had no authority, management or care over the automobile or as to the manner in which it should be driven, and the chauffeur did the company's business in his own way, and the orders given him by defendant merely stated to him the work which the company had arranged to do. It follows, therefore, that defendant is not liable for the death of a pedestrian caused by the negligence of the chauffeur in driving the automobile in which defendant was riding.

*McNamara* v. *Leipzig*, 180 App. Div. 515, reversed.

(Submitted October, 23 1919; decided November 25, 1919.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 24, 1917, affirming a judgment in favor of plaintiff entered upon a verdict.

**292**          McNamara *v.* Leipzig.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Joseph Force Crater* and *Alfred W. Meldon* for appellant. The trial court erred in denying the defendant's motion to dismiss the complaint upon the ground that the plaintiff had failed to establish that the driver of the automobile was the servant of the defendant at the time of the accident, and in submitting that question to the jury. (*Schmedes* v. *Deffaa*, 214 N. Y. 675; *Higgins* v. *W. U. Tel. Co.*, 156 N. Y. 75; *Standard Oil Co.* v. *Anderson*, 212 U. S. 215; *Maxmilian* v. *Mayor, etc.*, 62 N. Y. 160; *Kellogg* v. *Church Charity Foundation*, 203 N. Y. 191; *Lee* v. *Crawford Co.*, 182 App. Div. 191; *Weaver* v. *Jackson*, 153 App. Div. 661; *Cannon* v. *Fargo*, 222 N. Y. 329; *Driscoll* v. *Towle*, 181 Mass. 416; *Loughran* v. *Antophone Co.*, 77 App. Div. 542.)

*William S. Evans* for respondent. Duffy was, at the time of the accident, under the direction and control of defendant and was, therefore, his servant as a matter of law. (*Hartell* v. *Simonson & Son Co.*, 218 N. Y. 345; *Schmedes* v. *Deffaa*, 153 App. Div. 819; 214 N. Y. 675; *Standard Oil Co.* v. *Anderson*, 212 U. S. 215; *Howard* v. *Ludwig*, 171 N. Y. 507; *Wirth* v. *G. R. Signal Co.*, 136 App. Div. 536; *Higgins* v. *W. U. Tel. Co.*, 156 N. Y. 75; *McInerney* v. *D. & H. C. Co.*, 151 N. Y. 411; *Muldoon* v. *City Fireproofing Co.*, 134 App. Div. 453; *Callahan* v. *Munson S. S. Co.*, 141 App. Div. 791; *McCarthy* v. *McCabe*, 131 App. Div. 396.)

Collin, J. The action is to recover damages for the alleged negligence of the defendant by which the death of plaintiff's intestate was caused. (Code of Civil Procedure, sections 1902–1905.) The judgment of the Trial Term consequent upon the verdict in favor of the plaintiff was affirmed by the non-unanimous decision of the Appellate Division.

Under the exceptions and the briefs of counsel the appeal presents the single question whether or not the evidence tended to prove the liability of the defendant for the negligence of the chauffeur in so driving the automobile, in which the defendant was, against the plaintiff's intestate as to cause his death. The evidence concerning the question is harmonious and without contradiction. The defendant was in the automobile under the conditions: an agreement in writing existed between the Concord Garage Company, the owner, or the representative of the owner, of the automobile, and the defendant, whereby the company rented the automobile and the services of the chauffeur to the defendant for the term of three months, to be used by him during the term at any hour of the day or night he desired; the company agreed " to engage and furnish a chauffeur to operate and run said automobile during said period at its own cost and expense " and " to pay all expenses for gasoline used in propelling said automobile, together with any and all expenses for repairs or supplies used in said automobile; " also, to procure insurance covering the defendant from all liability by reason of accidents, injuries of any kind or from any cause whatsoever; the defendant agreed " to pay for the use of the aforesaid automobile and services of a chauffeur during the period " a designated sum. The performance of the agreement had been entered upon and was being carried out at the time of the accident. In the performance the defendant exercised no control in the selection of the chauffeur, or over him, his wages or the car, other than to direct him when and where to come with the car for the defendant and where to transport him. The car when not in the use of the defendant was kept in the garage of the company, was there cared for and supplied with the necessaries by the company and there the chauffeur received calls of the defendant for the use of the car and the chauffeur. In the matters of coming to and leaving

the defendant and of taking him to the places directed by him the chauffeur was under his directions. The defendant paid for the chauffeur's luncheon when using him at luncheon time and paid the cost of having the car watched when in the defendant's use and it was necessary for the chauffeur as well as defendant to leave it unattended. The accident happened upon a street specifically designated by defendant to be taken by the chauffeur.

In virtue of those facts this case falls into a class concerning which established legal principles are applicable and decisive. The defendant was not liable for the death of the intestate unless the facts tended to prove that the negligent chauffeur in driving was in a legal sense a servant of the defendant. There is not evidence that the defendant actively interfered with and caused the manner of driving, or had knowledge or notice that the chauffeur was incompetent or careless. It was essential, therefore, in order to establish a liability against the defendant that the relation of principal and agent, or that of master and servant, should exist. (*King v. N. Y. C. & H. R. R. R. Co.*, 66 N. Y. 181; *Stevens v. Armstrong*, 6 N. Y. 435.) The relation of principal and agent obviously did not exist. The liability of the defendant depends on the doctrine of the liability of a master for the acts of his servant done in the course of his employment. The relation of master and servant is created by contract, express or implied. Of the elements which may constitute it, those that the servant must, in the course of the employment, be doing the work of the master under the will, direction and control of the master throughout all the details of the work, are essential. (*Schmedes v. Deffaa*, 214 N. Y. 675, decided upon the dissenting opinion of Miller, J., in the court below, 153 App. Div. 819; *Higgins v. Western Union Tel. Co.*, 156 N. Y. 75; *Scribner's Case*, 231 Mass. 132; *Butler v. Townsend*, 126 N. Y. 105.) A servant may,

with his consent, through the agreement of his master, become for the occasion and time and to the extent agreed upon the servant of another. A master may loan or let to another a servant in his general employment, with the consent of the servant, as he may his implements, in such manner that the servant does the work of the other under the other's exclusive control and, therefore, is for the occasion and time the servant of the other. On the other hand, the master may agree with another that the master shall himself perform the work of the other through his own servant, the master retaining the service, direction and control of the servant. To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed. (*Schmedes* v. *Deffaa*, 214 N. Y. 675; *Hartell* v. *Simonson & Son Co.*, 218 N. Y. 345; *Standard Oil Company* v. *Anderson*, 212 U. S. 215; *Donovan* v. *Laing, Wharton & Down Const. Syndicate*, [1893] 1 Q. B. 629.) In the *Hartell* case Judge Cuddeback said: "A servant in the general employment of one person, who is temporarily loaned to another person to do the latter's work, becomes, for the time being, the servant of the borrower, who is liable for his negligence. But if the general employer enters into a contract to do the work of another, as an independent contractor, his servants do not become the servants of the person with whom he thus contracts, and the latter is not liable for their negligence." (p. 349.) A servant lent or let by his master to another does not become the servant of the other because the other directs what work is to be done or in what way it is to be done. If the servant remains subject to the general orders of the person who hires and pays him he is still his servant, although specific directions may be given him by the other from time to time as to the work to be done. The other person has the right to exercise the degree of control of the servant essential to secure the fulfillment of the agreement

between the master and himself. (*Johnson* v. *Netherlands Am. Steam Navigation Co.*, 132 N. Y. 576; *Standard Oil Co.* v. *Anderson*, 212 U. S. 215, 226; *Quinby Co.* v. *Estey*, 221 Mass. 56.)

Those principles have been frequently applied to the letting or hiring of a carriage or wagon with horses and a driver to be used for the conveyance of the hirer or his property from place to place. The judicial decisions hold clearly and almost uniformly that in the care and management of the horses and vehicle, the driver does not become the servant of the hirer, but remains subject to the control of the general employer, and that, therefore, the hirer is not liable for his negligence in driving. (*Kellogg* v. *Church Charity Foundation*, 203 N. Y. 191; *Little* v. *Hackett*, 116 U. S. 366, 379; *Quarman* v. *Burnett*, 6 Mees. & Wels. 499; *Hussey* v. *Franey*, 205 Mass. 413; *Corliss* v. *Keown*, 207 Mass. 149; *Peach* v. *Bruno*, 224 Mass. 447; *Driscoll* v. *Towle*, 181 Mass. 416; *Fenner* v. *Crips Bros.*, 109 Iowa, 455; *Sacker* v. *Waddell*, 98 Md. 43; *Frerker* v. *Nicholson*, 41 Colo. 12.) The vehicles with the horses and driver are let with the implied understanding that the driver remained the servant of the owner, and as such had the management of the property and exercised care and control over it. The driver and the property are engaged in the owner's business and subject to his management, direction and control. It is inherent in and a part of that business that the person being transported should have the power of direction as to where and when he should be taken.

The same rule is applied to the letting of an automobile and a chauffeur. (*Shepard* v. *Jacobs*, 204 Mass. 110; *Wallace* v. *Keystone Automobile Co.*, 239 Penn. St. 110; *Gerretson* v. *Rambler Garage Co.*, 149 Wis. 528.)

In the present case the written agreement defines the relation and liabilities of the parties. It gave for a consideration to the defendant the use, at demand, of the automobile and a chauffeur to operate and run it for a

certain period. The company possessed, managed, cared for and supplied the automobile and selected, employed and controlled the chauffeur, who operated the car for it. The extent of the defendant's control was to direct the chauffeur when and where to come with the automobile, where to go and where to stop. In obeying those directions the chauffeur was carrying out the company's work under the agreement. The defendant had no authority, management or care over the automobile or as to the manner in which it should be treated or driven. The chauffeur did the company's business in his own way and the orders given him by the defendant merely stated to him the work which the company had arranged to do.

The judgment should be reversed and the complaint dismissed, with costs in all the courts.

HOGAN, CARDOZO and CRANE, JJ., concur; HISCOCK, Ch. J., CHASE and ANDREWS, JJ., dissent.

Judgment reversed, etc.